1  Alexis Mager Lakusta, pro se
   1259 El Camino Real #245
2  Menlo Park, CA 94025
   (650) 566-9971
3



4

5              IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                  SAN FRANCISCO DIVISION

8

9   Alexis Mager Lakusta,            )  Case No. C-07-05161 JSW
                                     )
10       Appellant                   )
                                     )  **REPLY TO ORDER TO SHOW**
11                                   )  **CAUSE WHY CASE SHOULD**
                                     )  **NOT BE DISMISSED FOR**
12                                   )  **FAILURE TO PROSECUTE**
    _____)
13

14      Appellant Alexis Lakusta acknowledges that he has been late in

15  perfecting his appeal. However, he has been working very diligently in

16  assembling the record on appeal and in preparing his Statement of Issues

17  in Appeal from Order Denying Debtor's Motion for Leave to File Adversary

18  Proceeding, a copy of which is attached to this document

19      It was essential to complete two briefs for related appeals by the

20  appointed deadlines before full attention could be directed to this case.

21  Lakusta will submit the completed record on appeal to the bankruptcy court

22  by Monday, March 17, 2008

23                          Respectfully submitted,

24

25  Dated:  March 14, 2008        *Alexis Mager Lakusta*
                                  Alexis Mager Lakusta, pro se

              REPLY TO ORDER TO SHOW CAUSE WHY CASE SHOULD
              NOT BE DISMISSED FOR FAILURE TO PROSECUTE

1 | Alexis Mager Lakusta, pro se
1259 El Camino Real #245
2 | Menlo Park, CA 94025
(650) 566-9971
3

4

5 | UNITED STATES BANKRUPTCY COURT

6 | NORTHERN DISTRICT OF CALIFORNIA

7

8

9 | In re:                                    ) Case No.: No. 02-31521
                                            ) Chapter 7
10 | Alexis Mager Lakusta,                     ) (Case No. C 07-5161 JSW)
                                            )
11 |               Debtor, Appellant          ) **STATEMENT OF ISSUES**
                                            ) **IN APPEAL FROM ORDER**
12 |                                          ) **DENYING DEBTOR'S MOTION**
                                            ) **FOR LEAVE TO FILE**
13 |                                          ) **ADVERSARY PROCEEDING**
                                            )
14

15 | STATEMENT OF THE ISSUES

16 | Access to the courts is a fundamental tenet of the American judicial

17 | system. Please see In re Oliver, 682 F.2d 443, page 446.

18 | Furthermore, "[t]he policy of the federal rules is to permit liberal

19 | amendment to facilitate determination of claims on the merits and to

20 | prevent litigation from becoming a technical exercise in the fine points of

21 | pleading." Please see Express One Intern., Inc. v. Sochata, "Not Reported"

22 | in F.Supp.2d, 1998 WL 740755 N.D.Tex.,1998.

23 | The Ninth Court of Appeals

24 | has noted "on several occasions ... that the 'Supreme Court has

25 | instructed the lower federal courts to heed carefully the command

1       of Rule 15(a), F[ed].R.Civ.P., by freely granting leave to amend

2       when justice so requires.' " Gabrielson v. Montgomery Ward &

3       Co., 785 F.2d 762, 765 (9th Cir.1986) (quoting Howey v.

4       United States, 481 F.2d 1187, 1190 (9th Cir.1973) (citations

5       omitted). Thus "[r]ule 15's policy of favoring amendments to

6       pleadings should be applied with 'extreme liberality.' " Webb,

7       655 F.2d at 979 (citing Rosenberg Brothers & Co. v. Arnold, 283

8       F.2d 406 (9th Cir.1960) (per curiam)).

9    On July 2, 2007 United States Bankruptcy Court Judge Thomas E.

10  Carlson prevented appellant Alexis Lakusta, a pro se litigant, **from so much**

11  **as filing** a lawsuit against certain attorneys and their law firms. The judge

12  wrote in his Memorandum Re Debtor's Motion for Leave to File Adversary

13  Proceeding that he was not allowing Lakusta to file his lawsuit in part

14  because the judge determined that Lakusta's complaint did not meet certain

15  technical pleading requirements. Based on Lakusta's previous experience

16  with this judge, Lakusta thinks he has good grounds to believe that the

17  judge was simply looking for a convenient excuse to deny Lakusta's request

18  so the case could be gotten rid of.

19    The suit contains meritorious causes of action based on the willful and

20  wrongful behavior of the named attorneys whose acts constitute actual

21  fraud. The causes of action are not barred by the statute of limitations. The

22  attorneys' acts have to date **completely prevented the adjudication of** –

23  let alone the impartial adjudication of –, **every single claim that Lakusta**

24  **has presented to the courts for adjudication since June 10, 2002**.

25  Those claims include causes of action which are Lakusta's only avenue to

1  enforce his inalienable right to protect his real property interests and to
2  protect the interests of his creditors.

3    Lakusta believes the attorneys' malfeasance constitutes a full-fledged
4  "fraud upon the court" that is not dissimilar to the one at the heart of the
5  precedent-creating Hazel-Atlas Glass Corporation v. Hartford-Empire Co.
6  case (322 U.S. 238). According to Moore's Federal Practice (60-51),

7
8        Fraud [Upon] the Court Means Fraud that "Seriously"
         Affects the Integrity of [the] Adjudication Process
9

10  Please see discussion in In re Michelson, 141 B.R. 715 Bkrtcy E.D. Cal.,
11  1992. pages 725-727.

12    Moreover, Lakusta believes that Judge Carlson himself **violated his**
13  **basic mandate** to protect the assets of the Lakusta bankruptcy estate
14  when he approved an alleged "compromise of controversy" between
15  defendant Mark Evans and Lakusta on August 19, 2002. The record does
16  not show that the judge did anything more that hurriedly rubberstamp an
17  agreement that was neither in the best interests of the estate nor fair and
18  equitable for creditors. Please see In re Schmitt, 215 B.R. 417 (Bankr. 9th
19  Cir. 1997).

20    Lakusta also believes that Judge Carlson based the order from which
21  Lakusta appeals on both incorrect views of the law and upon clearly
22  erroneous findings of fact.

23
                    Example of a Clearly Erroneous Finding of Fact
24
      For example, under the heading "The First Acton" listed on page 2 of the
25
    court's Memorandum Re Debtor's Motion for Leave to File Adversary

1 | Proceeding, the judge begins with the following conclusory statement:

2
3
4

> In April 2002 Debtor conveyed title to his residence and
> another Woodside property to Evans.

5 | Nowhere in his memorandum does the judge say how he arrived at that
6 | highly disputed proposition. Furthermore, there is nothing in the record over
7 | the entire course of Lakusta's bankruptcy case that shows that Judge
8 | Carlson ever undertook to made such findings based on a review of the
9 | pertinent documents and the circumstances of the transactions.  However,
10 | Lakusta believes that he and his creditors were and are entitled to a
11 | determination of the central issue of case:

12 | 1. Lakusta has never signed off on the dismissal of his June 10,
13 | 2002 adversary proceeding, and Lakusta believes the law and
14 | the applicable rules of court fully support his view that the
15 | dismissal of the lawsuit is completely void and of no effect
16 | without his or his counsel's signature on the stipulation and
17 | order of dismissal. The chapter 7 trustee abandoned 633 Old
18 | La Honda Road by order of the court before the stipulation
19 | and order of dismissal was entered into, and the adversary
20 | proceeding that was to be dismissed includes causes of action
21 | for nature, extent, and validity of lien, cancellation of
22 | instrument, and quiet title, in each case with respect to both
23 | 548 and 633 Old La Honda Road. Lakusta was therefore a
24 | real party in interest in the lawsuit with significant
25 | substantive due process rights regarding his real property.

Furthermore, the settlement of the lawsuit had long before become a contested matter. Contested matters in the bankruptcy context are governed by F.R.B. P. Rule 9014, not Rule 7041, as David Duperrault wrote in the heading of the stipulation. In addition, the stipulation and order of dismissal signed by Ron Oliner and David Duperrault was explicitly intended by Mr. Oliner to be "without prejudice". Lakusta therefore believes the judge went even further beyond his authority when he signed an order to dismiss the adversary proceeding "with prejudice". When Lakusta brought the matter to the judge's attention on December 11, 2006 [**Record item #132**, page 6 ff.], Judge Carlson yelled at him, called him "a menace", and ignored his request to correct the error. Instead, the judge ordered that Lakusta's refiled adversary proceeding be dismissed "with prejudice", further violating Lakusta's substantive due process rights and putting in serious jeopardy the interests and rights of Lakusta's legitimate creditors. The improper dismissal of Lakusta's June 10, 2002 adversary proceeding has been the linchpin to every unfavorable ruling Judge Carlson has made against Lakusta and his bankruptcy estate.

2. On September 8, 2003, Judge Carlson signed an order preserving "[a]ll of claims to Proceeds of Alexis Lakusta, Mark Evans, Altas Realty, Old La Honda Properties, Chicago Title Company, and all lien holders not paid in full from escrow"

1    [**Record item #151**], and he stated on the record at the
2    hearing the following:

3        ….and Mr. Lakusta has wanted to be very sure that he..
4        in agreeing...as I understand you Mr. Lakusta, you
5        want to make sure that in agreeing to a sale, you
6        are not letting any of this money get to Mr. Evans
7        **without a full trial of your claims against him, and**
8        **this order would preserve that**.

9
10   On October 14, 2003 Judge Carlson signed a supplemental
     order [**Record item #156**] that includes a "Reservation of
11
     rights". The "Reservation of rights" states, in part
12

13       Should Alexis Lakusta sign a quitclaim deed and
14       release his *lis pendens* to facilitate the sale to Brooks,
15       **such act shall not prejudice any claims Lakusta has**
16       **to the proceeds of sale or any claims against Evans,**
17       **Old La Honda Properties, LLC, Chicago Title Co., Atlas**
18       **Realty, Alvin Silbernagel, Sharon LaFountain, etc.**

19
     Lakusta signed the quitclaim deed, but Judge Carlson
20
     has refused to honor the orders. Lakusta believes that
21
     constitutes a violation of his substantive due process rights
22
     guaranteed by Amendment Five of the Constitution of the
23
     United States of America and by Article 1, Section 1 of the
24
     Constitution of the State of California. The refusal of the
25
     judge to obey the orders has also had the effect of defrauding

1   Lakusta and Lakusta's legitimate creditors, who Lakusta

2   believes were and are entitled to have the suits against

3   Evans, Chicago Title Company, and other defendants

4   ***litigated on the merits*** and not secretly dismissed without

5   notice or otherwise eliminated by improper means.

6   ~~and his bankruptcy estate.~~

7
8   3.  The judge was mandated to make findings concerning title to

9       548 and 633 Old La Honda Road at the May, 2005 trail by

10      Rule 7052 of the Federal Rules of Bankruptcy Procedure.

11      However, Judge Carlson failed to comply with that duty as

        well.

12
13  To come more directly to the point, Judge Carlson's conclusory state-

14  ment is manifestly contradicted by the record on appeal, which reveals that

15  Chicago Title Company never had any authority to record deeds, to deliver

16  deeds, or to close escrow regarding the two bogus sale transactions in

17  question. Chicago Title Company documents for escrow number 02970-

18  000902696-001 (548 Old La Honda Road) [**Record item #171**] show the

19  following:

20                  SETTLEMENT ENTRY RECIEPT

21                  total receipts          [$]0.00

22                  DISBURSEMENT PROCESSING

23                  approved receipts       [$]0.00

24                  issued disburse         [$]0.00

25
    That is to say, no funds were ever deposited into the escrow account to

1  purchase the property. **Record item #171** also shows that Chicago Title
2  Company cancelled the escrows for 548 Old La Honda Road and for 633 Old
3  La Honda Road on October 17, 2002, and that Chicago Title Company
4  therefore never closed either escrow. (Please see copies of the Chicago Title
5  Company cancellation records attached to this document as **exhibit A**.)
6  However, the record also shows that Chicago Title Company recorded deeds
7  to both 548 Old La Honda Road and to 633 Old La Honda Road and provided
8  for delivery of those deeds to "Mark Evans" at "13651 Saratoga-Sunnyvale
9  Road, Saratoga, CA 95070" on April 22, 2002. See **Record item #21**.
10 Additionally, the deed to 548 Old La Honda Road which was delivered to
11 Evans is a forgery, as Lakusta testified at his 341 Meeting of Creditors on
12 July 9, 2002, and which can be conclusively proven copies of notary
13 documents in Lakusta's possession which are not yet a part of the record.

14 **The recordation of the deeds and the delivery of the deeds to**
15 **Evans constitute full-out real estate fraud by Chicago Title Company.**

16
17                          Basis of Evans' Legal Strategy:

18                  Concealment of Title Fraud and Art Burglaries

19      Evans and his lawyers have based Evans' entire legal defense and equity
20 theft strategy on a claim of having obtained "good title" to 548 and 633 Old
21 La Honda Road and upon the improper elimination of Lakusta's claims
22 regarding ownership of his Woodside properties and Evans' burglaries of
23 Lakusta's Woodside homes on June 6, 2002.

24      The strategy has included filing a fraudulent chapter 11 bankruptcy case
25 which Evans brought under the name of "Old La Honda Properties LLC".
   During the Old La Honda Properties proceedings Judge Carlson allowed

1   Evans' lawyers to conduct a summary judgment unlawful detainer action
2   against Lakusta in the bankruptcy court, although neither Evans nor his
3   shell corporation Old La Honda Properties had standing to prosecute the
4   case. Carlson stated on the record that he was aware of the problem. At the
5   end of the trail the judge ordered that Lakusta be removed from his own
6   property by a federal marshal on August 19, 2003, based on findings the
7   judge never made and could never have made, but which the judge alleged
8   he had made at some pervious unspecified time. Although the judge
9   explicitly said his ruling was not "res judicata" with respect to title, he
10  nevertheless also awarded Evans over $9,000 of "rent", to be paid by
11  Lakusta for living in his own home – to a thief with a fraudulently obtained
12  deed.

13      Subsequently Evans used Old La Honda Properties LLC to steal more
14  than $175,000.00 from the escrow account in which the proceeds from the
15  sale of 633 Old La Honda Road were being kept, pending the litigation of
16  Lakusta's preserved claims against Evans, Chicago Title Company, and other
17  defendants. On March 21, 2005 Evans hired Lakusta's lawyer, Mr. Stephen
18  D. Pahl, and Ms. Catherine Schlomann Robertson, Mr. Pahl's partner, to
19  arrange for the actual theft of the funds from the escrow account. Ms.
20  Robertson is a former extern of Judge Carlson. Mr. Pahl switched sides 7½
21  weeks before the May, 2005 trial to represent Evans, and not Lakusta, so
22  the operation could be carried out with the full cooperation of the court.

23

24              Evans' Vexatious Litigant Motion Is an Abuse of Process

25      Evans also sought and obtained an order from Judge Carlson to have
    Lakusta stigmatized as a "vexatious litigant" for allegedly filing "frivolous",

"harassing", and "repetitive" lawsuits against Evans. At the hearing on the matter, the judge denied Lakusta a meaningful opportunity to respond to the allegations of Evans and Ms. Robertson, as required by due process and by the Ninth Circuit Court guidelines. Ms. Robertson's representations to Judge Carlson were dishonest, deceitful, and false. Her representation of Evans was also in violation of the State Bar Act and the Local Civil Rules of the Northern District of California. Since California subscribes to the "hot potato" rule, Ms. Robertson's representation of Evans in any capacity was prohibited. Ms. Robertson's special relationship with Judge Carlson was never undisclosed, and is a separate further issue. Lakusta believes the matter has a seriousness which goes beyond the mere appearance of impropriety.

The "vexatious litigant" order, as well as two other orders issued by Carlson, are on appeal before the Ninth Circuit Court.

## The Main Issue of This Appeal

**Did Judge Carlson abuse his discretion when he denied Lakusta access to the court to file his May 11, 2007 lawsuit?**

## Standard of Review

A vexatious litigant order and the application of a vexatious litigant order are reviewed for an abuse of discretion. See Moy v. United States, 906 F.2d 467, 469 (9th Cir.1990). The court abuses its discretion when it bases its decision on an incorrect view of the law or a clearly erroneous finding of fact. See Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, C.A.9 (Cal.),2007, page 1057. Please also see De Long v. Hennessey, 912 F.2d 1144 C.A.9

1  (Cal.), 1990, which sets out the factors to be considered in reviewing a

2  vexatious litigant order in the Ninth Circuit Court.

### The Sub-issues of This Appeal

The only questions the court will need to concern itself with to make that
determination are these:

- Under California law, all real property has an owner. Ownership is a
  matter of fact to be determined by an examination of the evidence
  and an examination of the circumstances surrounding acquisition of
  the property. In his Memorandum Re Debtor's Motion for Leave to File
  Adversary Proceeding, Judge Carlson finds that appellant Alexis
  Lakusta conveyed two of his real properties to defendant Mark Evans
  in April, 2002, without stating any basis for his conclusion and in the
  complete absence of having ever presided over so much as a single
  evidentiary hearing on the central issue of the case assigned to him.
  The possession of a grant deed is not conclusory as to ownership, as
  the presumption of ownership is rebuttable. Quiet title and cancella-
  tion of instrument actions were filed in the bankruptcy court on June
  10, 2002 and a *lis pendens* regarding title to those properties was
  recorded by Lakusta in the San Mateo County Recorders Office on
  June 13, 2002. **As a matter of California law, did Lakusta convey
  his residence at 633 Old La Honda Road in Woodside and his
  forest land at 548 Old La Honda Road to defendant Mark Evans
  in April, 2002?** All other questions to be addressed in this case are
  but corollaries of this issue.

Applicable standards of review: clearly erroneous/de novo.

1    • "The role of the bankruptcy court in deciding whether to exercise its
2    discretion and approve a proposed compromise, with some deference
3    to judgment of a trustee, is to insure that the bankruptcy estate, that
4    is, the interest of creditors, is not adversely affected by a proposed
5    settlement with a particular creditor or third part."  In re Nationwide
6    Sports Distributors, Inc., 227 B.R. 455 (Bankr. E.D. Pa. 1998)
7    Furthermore, "the nature of a bankruptcy case imparts upon the court
8    a duty to scrutinize settlements in a more exacting manner than
9    would be warranted in a two-party context." In re Merry-Go-Round
10   Enterprises, Inc., 229 B.R. 337 (Bankr. D. Md. 1999). "The decision
11   whether to approve a proposed settlement negotiated by a trustee or
12   a debtor-in-possession must be an informed decision, that is, based
13   upon objective evaluation of the developed facts; A court's approval
14   of a compromise, in the absence of sufficient factual foundation,
15   inherently constitutes an abuse of discretion." In re Panem, 352 B.R.
16   269 (Bankr. D. Colo. 2006)

17       According to the terms of an agreement Lakusta was coerced into
18   signing on July 18, 2002, Lakusta would pay Mark Evans $180,000.00
19   – to be raised by the forced sale of Lakusta's Woodside properties – in
20   exchange for the possible return of precious art work and other
21   invaluable possessions stolen by Mark Evans and his agents during
22   burglaries of two Lakusta's homes in Woodside, California on June 6,
23   2002. Evans broke into Lakusta's homes just two days after Lakusta
24   filed for bankruptcy court protection to thwart Evans and his co-
25   conspirator – Chicago Title Company senior escrow officer Sharon E.

1    LaFountain – for stealing the equity in Lakusta's Woodside properties.

2    At the time Lakusta's total equity in his properties was estimated to

3    be approximately $1,000,000.00.

4    Evans was *at best* an unsecured creditor of the Lakusta bankruptcy

5    estate. Therefore, in addition to being civil extortion, the agreement

6    violated United States bankruptcy law by advancing Evans ahead of

7    all of Lakusta's legitimate unsecured creditors.

8    Judge Carlson approved the agreement on August 19, 2002,

9    exactly 20 days from the date a notice was sent out to creditors. An

10    objection to the alleged "compromise" from a major creditor of

11    Lakusta's bankruptcy estate was filed in the bankruptcy court on the

12    same day.

13    The record suggests the judge did not make an informed and

14    independent assessment before signing the order approving the

15    proposal. **Did Judge Carlson abuse his discretion when he**

16    **approved the agreement signed by Evans, Lakusta, Boone,**

17    **and Duperrault on July 18, 2002?**

18    Applicable standard of review: abuse of discretion

19
20    • Abandonment in a bankruptcy case is *nunc pro tunc*, so real property

21    reverts to its owner as if no bankruptcy had ever been filed. Mr.

22    Lakusta was the sole owner of 633 Old La Honda Road when he filed

23    for chapter 11 protection of his properties on June 4, 2002. On March

24    27, 2003 Judge Carlson authorized chapter 7 trustee Charles Sims to

25    abandon the estate's "right, title and interest" in 633 Old La Honda

Road. Subsequently, a stipulation and order of dismissal of Lakusta's

STATEMENT OF ISSUES IN APPEAL FROM ORDER DENYING
DEBTOR'S MOTION FOR LEAVE TO FILE ADVERSARY PROCEEDING - 13

June 10, 2002 adversary proceeding against Evans was entered into between Evans' counsel David Duperrault and Trustee Sims' counsel Ron Oliner and signed by Judge Carlson on June 18, 2003. The adversary proceeding includes causes of action for nature, validity, and extent of lien, cancellation of instrument, and quiet title. The abandonment of 633 Old La Honda Road thus made Lakusta again a real party in interest with respect to the June 10, 2002 adversary proceeding the stipulation was intended to dismiss. **Is the dismissal of Lakusta's adversary proceeding void and of no effect in the absence of either Lakusta's or his counsel's signature?**

Applicable standard of review: de novo

- A contract is an agreement which the courts will enforce. According to California Civil Code section 1550, "[i]t is essential to the existence of a contract that there should be:

  1. Parties capable of contracting;
  2. Their consent:
  3. A lawful object; and
  4. A sufficient cause or consideration.

Section 1605 of the Civil Code states that

Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a

1    promise.

2    The agreement signed by Mark Evans and Alexis Lakusta on July 18,

3    2002 contains a logical fallacy commonly known as an "appeal to

4    ignorance." The agreement explicitly leaves as undetermined whether

5    grant deeds in Evans' possession were or were not valid instruments

6    of conveyance. Evans claimed they were. Lakusta said they were void

7    and of no legal value. The presumption in Evans' favor is rebuttable.

8    Furthermore, the only inducement offered by Evans in the agreement

9    in exchange for Lakusta's promises was the possible return (at Evans'

10   discretion) of the portrait of Lakusta's deceased mother, the exterior

11   doors removed by Evans from two of Lakusta's Woodside homes, and

12   other valuable personal property stolen from Lakusta during Evans'

13   burglaries of Lakusta's homes on June 6, 2002 and on other occasions.

14   Forbearance of a criminal act is not consideration under the laws of

15   this state. **Is the July 18, 2002 agreement between Evans and**

16   **Lakusta a contract under California law?**

17   Applicable standard of review: de novo

18
     •  The United States Supreme Court has repeatedly held that infirm
19
        judgments are inherently void. The judgment obtained by Ms.
20
        Catherine Schlomann Robertson of Pahl and Gosselin on behalf of its
21
        client Mark Evans following the May, 2005 trial was obtained by
22
        denying Lakusta a full and fair opportunity to have to claims heard at
23
        the trial and by extrinsic fraud on the part of officers of the court. The
24
        improper behavior includes repeated lying by attorney David A. Boone
25
        while he was under oath during the trial. **Is the judgment issued**

STATEMENT OF ISSUES IN APPEAL FROM ORDER DENYING
DEBTOR'S MOTION FOR LEAVE TO FILE ADVERSARY PROCEEDING - 15

1  **by Judge Carlson on June 8, 2005 completely void and not**

2  **entitled to recognition in any court, based upon a denial of**

3  **due process of law and upon extrinsic fraud by officers of the**

4  **court?**

5  <u>Applicable standard of review</u>: de novo

6

7  • A contract is an agreement that the courts will enforce. At a trial to

   determine whether the agreement signed by Evans and Lakusta on

8
   July 18, 2002 was enforceable, Judge Carlson failed to address the

9
   question of whether the agreement met the requirements of a

10
   contract under California law. The judge also failed to "police the

11
   bargain" in any way, and he ultimately based his decision that the

12
   agreement was enforceable upon an irrelevant precept. **Did Judge**

13
   **Carlson make a error of law in ruling that agreement signed**

14
   **by Evans and Lakusta on July 18, 2002 is enforceable under**

15
   **California law?**

16
   <u>Applicable standard of review</u>: de novo

17

18

19                              Respectfully submitted,

20  Dated: March 14, 2008          *Alexis Mager Lakusta*
                                   Alexis Mager Lakusta, pro se
21

22

23

24

25